## UNITED STATES DISTRICT COUT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Tampa Division

Case No.:

**ACE AMERICAN INSURANCE COMPANY**, as subrogee of US Before 2134762 Ontario, Inc.,

    Plaintiff,

vs.

**AQUILA USA, INC.,** a Florida corporation, and **SINO EAGLE USA, INC.**, a Florida corporation,

    Defendants,

_____/

### COMPLAINT

Plaintiff, ACE American Insurance Company ("ACE"), as subrogee of US Before 2134762 Ontario, Inc. ("US Before"), sues Defendants Aquila USA, Inc. ("Aquila") and Sino Eagle USA, Inc. ("Sino US" with "Aquila", "Defendants"), and alleges:

### PARTIES, JURISDICTION AND VENUE

1.  This is a civil action for, *inter alia*, breach of warranties pursuant to the Magnusson Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.*, and damages in excess of this Court's jurisdictional minimum, exclusive of costs, interest and attorney's fees, *to wit*: damages of $4,106,124.49.

-1-

LEGAL\114684024\1

2.      Plaintiff ACE is a foreign corporation authorized to do business and issue policies of insurance in Florida, including in Pinellas County, Florida.

3.      At all times material, US Before, owned a marine yacht, Aquila 70 Luxury, STEADY AF ("Aquila Yacht"), including the contents therein ("Property"), which Aquila Yacht was purchased in, operated in, and was birthed in Pinellas County, Florida.

4.      At all times material, ACE insured US Before for certain risks, including property damages, personal property, and loss of use relating to the Property.  A copy of the Insurance Policy is attached as Exhibit A.

5.      Defendant Aquila is a Florida corporation authorized to do business in Florida including in Pinellas County, Florida.

6.      Aquila is a joint venture between MarineMax, Inc. ("Max Inc.") and Hangzhou Sino Eagle Yacht Co., Ltd ("Sino China").[1]  Max Inc. is a Florida corporation that shares the same officers, directors, and same principal place of business in Florida with MarineMax East, Inc. ("Max East"), which is a foreign

---

[1]      https://www.aquilaboats.com/news/lex-raas-retires-from-marinemax-transitions-to-executive-advisory-role-with-aquila-power-catamarans (last visited 4/2/2026) ("In 2012, [Lex] Raas joined MarineMax as President of the Charter and Special Initiatives, where he partnered with then-CEO Bill McGill and the Xiong family of Sino Eagle Group to launch Aquila Power Catamarans . . . .

[Lex] Raas's transition to Executive Advisory role ensures continuity working closely with our next generation of leadership, including his sons Jean Raas (CEO and Chief Product Officer of Aquila USA) and Alan Raas (Global Brand Manager), who have been instrumental in the brand's continued success.")

corporation authorized to and doing business in Florida, its principal place of business.  Max Inc. and Max East (collectively "MarineMax") are related entities.

7.     Defendant Sino US is a Florida corporation that, at all times relevant, was authorized to do business in Florida, including in Pinellas County, Florida. Sino US is the US division of Sino China, MarineMax's joint venture partner.  Sino US, Sino China and MarineMax are agents of each other authorized to act on the other's behalf, including with respect to Aquila.  Furthermore, Sino US and Aquila have the same officers and directors, *i.e.* Jean Raas.

8.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331, and 15 U.S.C. § 2310(d) because this matter involves claims based on federal law – Magnuson-Moss Warranty Act – and is for monetary damages in excess of the Court's jurisdictional requirement, exclusive of interest, costs and attorney's fees. The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

9.     Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1332 because ACE and the defendants, Aquila and Sino US, are citizens of different states and this matter is for monetary damages in excess of the Court's jurisdictional requirement, exclusive of interest, costs and attorney's fees.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because, *inter alia*,  because (1) Aquila and Sino US are Florida corporations, (2) the purchase

-3-

of the Aquila Yacht occurred in, (3) the events giving rise to the claims occurred in, and (4) the Aquila Yacht was birthed in, Pinellas County, Florida.

11. ACE has complied with all conditions precedent to pursuing this action or said conditions have been waived or have otherwise occurred.

## FACTUAL ALLEGATIONS

12. In or about July 2021, Mr. Rob Tyler purchased in Florida from Max East, the Aquila Yacht with an estimated delivery date of January 2022, but no later than February 15, 2022 ("Original Delivery Date"). The Aquila Yacht was purchased in a consumer transaction for only non-commercial personal use and not for resale. Prior to delivery of the yacht, Mr. Tyler transferred the Aquila Yacht to US Before, an entity he controls, and continued to use the yacht only for non-commercial personal use and not for resale until it was destroyed.

13. Aquila designed and/or manufactured various yachts and other marine vessels, including the Aquila Yacht, which it marketed in, and placed into commerce in Florida before it was purchased by US Before.

14. Sino US designed and/or manufactured various yachts and other marine vessels, including the Aquila Yacht, which it marketed in, and placed into commerce in Florida before it was purchased by US Before.

15. Prior to the Original Delivery Date, the Aquila Yacht had problems that required warranty work be performed by MarineMax, the warranty servicer

-4-

for yachts manufactured by Aquila and/or Sino US, which delayed delivery of the Aquila Yacht until June 2022 ("New Delivery Date"). MarineMax continued preforming warranty work on the yacht after the New Delivery Date. MarineMax has and maintains the records indicating the dates it performed warranty work and the nature of the work performed.

16.    On August 5, 2024, the Aquila Yacht experienced a fire that resulted in its complete destruction as well as destruction of the contents and other property separately purchased by US Before for use on/in connection with the Aquila Yacht ("Loss"). US Before submitted an insurance claim to ACE for damages resulting from the Loss, including damages to both the yacht and the other property on the yacht.

17.    ACE paid $4,141,116.50 to or on behalf of US Before, and received salvage proceeds of $34,992.01 with respect to the sale of the destroyed Aquila Yacht, thus paying net damages of $4,106,124.49 ("Insured Damages").

18.    As a result of paying the Insured Damages relating to the Loss, ACE became subrogated to the rights of US Before by operation of law and the Insurance Policy and is thus entitled to seek recovery from the responsible parties of the total Insured Damages paid pursuant to the Insurance Policy, *to wit*: $4,106,124.49.

LEGAL\114684024\1

## COUNT 1
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
### (AGAINST AQUILA)

19.   Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

20.   On or before July 2021, Aquila manufactured, marketed, and placed into commerce the Aquila Yacht, which was purchased by US Before.

21.   The Aquila Yacht reached US Before in the same manner it was placed into commerce by Aquila, subject to the attempted pre-delivery warranty repairs made by MarineMax at the request of Aquila before the New Delivery Date. Furthermore, US Before did not modify, alter or misuse the Aquila Yacht before it was completely destroyed in the Loss.

22.   The Aquila Yacht was defective and unreasonably dangerous as a result of manufacturing defects relating to its electrical system.  Specifically, the electrical system was improperly manufactured such that the original electrical wiring was damaged, frayed, and/or improperly connected, which left exposed wires that could cause electrical arcing and fire (fig. 1).

23.   Also, the electrical system was improperly manufactured in a manner that did not minimize the risk of fire and fire spread.  For example, the electrical system did not use flame retardant and/or self-extinguishing loom (wire covering with a blue line – fig. 2), the standard of care for marine vessels operating in U.S.

-6-

waters and/or using other comparable methods to minimize the risk of fire and fire spread.

Fig. 1 – Exposed/Damaged original wiring and improper connectors and connections





Fig. 2 – Non flame retardant/Non self-extinguishing Loom burning during lab test



24.     As a direct and proximate result of the manufacturing defects with the Aquila Yacht, an electrical fire began on the Aquila Yacht behind the wall

panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for the total Insured Damages, plus costs in this action, pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 2
## NEGLIGENT MANUFACTURING
### (AGAINST AQUILA)

25.     Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

26.     On or before July 2021, Aquila manufactured, marketed and placed into commerce the Aquila Yacht, which was purchased by US Before.

27.     The Aquila Yacht reached US Before in the same manner it was placed into commerce by Aquila, subject to the purported pre-delivery warranty repairs made by MarineMax at the request of Aquila before the New Delivery Date. Furthermore, US Before did not modify, alter or misuse the Aquila Yacht before it was completely destroyed in the Loss.

28.     The Aquila Yacht was defective and unreasonably dangerous as a result of the negligent manufacturing of its electrical system.  Specifically, the

-8-

LEGAL\114684024\1

electrical system was improperly manufactured such that the original electrical wiring was damaged, frayed, and/or improperly connected, which left exposed wires that could cause electrical arcing and fire (fig. 1, *supra*).

29.     Also, the electrical system was improperly manufactured in a manner that did not minimize the risk of fire and fire spread.  For example, the electrical system did not use flame retardant and/or self-extinguishing loom (wire covering with a blue line – fig. 2, *supra*), the standard of care for marine vessels operating in U.S. waters and/or using other comparable methods to minimize the risk of fire and fire spread.

30.     As a direct and proximate result of the negligent manufacturing defects with the Aquila Yacht, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for the total Insured Damages, plus costs in this action, pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

LEGAL\114684024\1

## COUNT 3
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
(**AGAINST SINO US**)

31.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

32.    On or before July 2021, Sino US manufactured, marketed and placed into commerce the Aquila Yacht, which was purchased by US Before.

33.    The Aquila Yacht reached US Before in the same manner it was placed into commerce by Sino US, subject to the purported pre-delivery warranty repairs made by MarineMax at the request of Sino US before the New Delivery Date. Furthermore, US Before did not modify, alter or misuse the Aquila Yacht before it was completely destroyed in the Loss.

34.    The Aquila Yacht was defective and unreasonably dangerous as a result of manufacturing defects relating to its electrical system.  Specifically, the electrical system was improperly manufactured such that the original electrical wiring was damaged, frayed, and/or improperly connected, which left exposed wires that could cause electrical arcing and fire (fig. 1, *supra*).

35.    Also, the electrical system was improperly manufactured in a manner that did not minimize the risk of fire and fire spread.  For example, the electrical system did not use flame retardant and/or self-extinguishing loom (wire covering with a blue line – fig. 2, *supra*), the standard of care for marine vessels

-10-

operating in U.S. waters and/or using other comparable methods to minimize the risk of fire and fire spread.

36.    As a direct and proximate result of the manufacturing defects with the Aquila Yacht, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for the total Insured Damages, plus costs in this action, pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 4
## NEGLIGENT MANUFACTURING
(**AGAINST SINO US**)

37.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

38.    On or before July 2021, Sino US manufactured, marketed and placed into commerce the Aquila Yacht, which was purchased by US Before.

39.    The Aquila Yacht reached US Before in the same manner it was placed into commerce by Sino US, subject to the purported pre-delivery warranty repairs made by MarineMax at the request of Sino US before the New Delivery Date.

-11-

Furthermore, US Before did not modify, alter or misuse the Aquila Yacht before it was completely destroyed in the Loss

40.    The Aquila Yacht was defective and unreasonably dangerous as a result of the negligent manufacturing of its electrical system.  Specifically, the electrical system was improperly manufactured such that the original electrical wiring was damaged, frayed, and/or improperly connected, which left exposed wires that could cause electrical arcing and fire (fig. 1, *supra*).

41.    Also, the electrical system was improperly manufactured in a manner that did not minimize the risk of fire and fire spread.  For example, the electrical system did not use flame retardant and/or self-extinguishing loom (wire covering with a blue line – fig. 2, *supra*), the standard of care for marine vessels operating in U.S. waters and/or using other comparable methods to minimize the risk of fire and fire spread.

42.    As a direct and proximate result of the negligent manufacturing defects with the Aquila Yacht, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for the total Insured Damages, plus costs in this

LEGAL\114684024\1

action, pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 5
## FRAUDULENT MARKETING/PROMOTION
## Fla. Stat. 817.40(5) & 817.41(1)
(AGAINST AQUILA)

43.     Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

44.     Prior to US Before purchasing the Aquila Yacht, Aquila advertised the subject yacht as being CE Certified, Cat A (Ocean) ("CE Certification Statement") (fig. 3).  Simply, Cat A (Ocean) is the highest and toughest standard reserved for vessels designed to be self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

Fig. 3 – CE Certification on Brochure

| Tankage | |
| --- | --- |
| Fuel tank capacity (total) | 4,400 L / 1,162 GAL |
| Fuel tank (optional) | 780 L / 206 GAL |
| Water tank (standard) | 1,560 L / 412 GAL |
| Holding tank (total) | 560 L / 146 GAL |
| CE Certification (internationally recognized) | |
| Cat. A (Ocean) | Certified |

45.     The Aquila Yacht, however, was not CE Certified, Cat A (Ocean).  Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical system that allows for extended ocean voyages without a fire risk created by an

-13-

improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

46.    Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

47.    Also, Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

48.    US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

49.    The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the

-14-

subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for actual and other damages allowed by section 817.41, Florida Statutes, up to and including the total Insured Damages, attorney's fees and costs, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 6
## FRAUDULENT MARKETING/PROMOTION
## Fla. Stat. 817.40(5) & 817.41(1)
(AGAINST SINO US)

50. Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

51. Prior to US Before purchasing the Aquila Yacht, Sino US advertised the subject yacht as being CE Certified, Cat A (Ocean), *i.e.* CE Certification Statement (fig. 3, *supra*). Simply, Cat A (Ocean) is the highest and toughest standard reserved for vessels designed to be self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

52. The Aquila Yacht, however, was not CE Certified, Cat A (Ocean). Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical system that allows for extended ocean voyages without a fire risk created by an

LEGAL\114684024\1

improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

53.     Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

54.     Also, Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

55.     US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

56.     The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the

LEGAL\114684024\1

subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for actual and other damages allowed by section 817.41, Florida Statutes, up to and including the total Insured Damages, attorney's fees and costs, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 7
## FRAUDULENT INDUCEMENT/MISREPRESENTATION
### (AGAINST AQUILA)

57.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

58.    On or shortly before July 2021, US Before requested and received from Aquila a brochure providing information about the Aquila Yacht.

59.    The brochure included, *inter alia*, the CE Certification Statement (fig. 3, *supra*).    Simply, the classification in the CE Certification Statement (Cat A (Ocean)) is the highest and toughest standard reserved for vessels designed to be self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

60.    The Aquila Yacht, however, was not CE Certified, Cat A (Ocean). Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical

system that allows for extended ocean voyages without a fire risk created by an improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

61.     Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

62.     Also, Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

63.     Simply stated, the CE Certification Statement was a misrepresentation of a material fact that Aquila made in the brochure with the purpose of inducing purchasers of yachts to rely upon.

64.     US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

LEGAL\114684024\1

65.     The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for damages, including but not limited to benefit of the bargain damages, out of pocket damages, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 8
## FRAUDULENT INDUCEMENT/MISREPRESENTATION
(**AGAINST SINO US**)

66.     Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

67.     On or shortly before July 2021, US Before requested and received from Sino US a brochure providing information about the Aquila Yacht.

68.     The brochure included, *inter alia*, the CE Certification Statement (fig. 3, *supra*).  Simply, the classification in the CE Certification Statement (Cat A (Ocean)) is the highest and toughest standard reserved for vessels designed to be

-19-

self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

69.    The Aquila Yacht, however, was not CE Certified, Cat A (Ocean). Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical system that allows for extended ocean voyages without a fire risk created by an improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

70.    Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

71.    Also, Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

LEGAL\114684024\1

72.     Simply stated, the CE Certification Statement was a misrepresentation of a material fact that Sino US made in the brochure with the purpose of inducing purchasers of yachts to rely upon.

73.     US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

74.     The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for damages, including but not limited to benefit of the bargain damages, out of pocket damages, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

LEGAL\114684024\1

**COUNT 9**
**NEGLIGENT MISREPRESENTATION**
(**AGAINST AQUILA**)

75.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

76.    On or shortly before July 2021, US Before requested and received from Aquila a brochure providing information about the Aquila Yacht.

77.    The brochure included, *inter alia*, the CE Certification Statement (fig. 3, *supra*).  Simply, the classification in the CE Certification Statement (Cat A (Ocean)) is the highest and toughest standard reserved for vessels designed to be self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

78.    The Aquila Yacht, however, was not CE Certified, Cat A (Ocean). Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical system that allows for extended ocean voyages without a fire risk created by an improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

79.    Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired

-22-

electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

80.    Also, Aquila knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

81.    Simply stated, the CE Certification Statement was a misrepresentation of a material fact that Aquila made in the brochure with the purpose of inducing purchasers of yachts to rely upon.

82.    US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

83.    The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for damages, including but not limited to benefit of the bargain damages, out of pocket damages, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 10
## NEGLIGENT MISREPRESENTATION
### (AGAINST SINO US)

84.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

85.    On or shortly before July 2021, US Before requested and received from Sino a brochure providing information about the Aquila Yacht.

86.    The brochure included, *inter alia*, the CE Certification Statement (fig. 3, *supra*).  Simply, the classification in the CE Certification Statement (Cat A (Ocean)) is the highest and toughest standard reserved for vessels designed to be self-sufficient for extended ocean voyages in seas over 13 feet and wind forces over 40 knots.

87.    The Aquila Yacht, however, was not CE Certified, Cat A (Ocean). Specifically, a properly CE Certified, Cat A (Ocean) vessel will have the electrical system that allows for extended ocean voyages without a fire risk created by an

-24-

improperly wired electrical system that does not use flame retardant and/or self-extinguishing loom, or other comparable methods to minimize the fire risk.

88.    Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading before US Before purchased the yacht because of the improperly wired electrical system and the use of loom that was not flame retardant and/or self-extinguishing.

89.    Also, Sino US knew or should have known that the Aquila Yacht was not CE Certified, Cat A (Ocean) and that the CE Certification Statement was false and misleading after US Before purchased the yacht by virtue of the numerous warranty repair work relating to the yacht's electrical system that it attempted, but failed, to fix before the Loss and the continued use of loom that was not flame retardant and/or self-extinguishing.

90.    Simply    stated,    the    CE    Certification    Statement    was    a misrepresentation of a material fact that Sino US made in the brochure with the purpose of inducing purchasers of yachts to rely upon.

91.    US Before reasonably and justifiably relied on the CE Certification Statement in deciding to purchase the yacht and would not have purchased the yacht had it known the CE Certification Statement was false.

92. The complete destruction of the Aquila Yacht and the Loss were the direct and proximate result of US Before's reasonable and justifiable reliance on the false and misleading CE Certification Statement to purchase the yacht and the subsequent fire resulting from the vessel's improperly wired electrical system, including the use of loom that was not flame retardant and/or self-extinguishing.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for damages, including but not limited to benefit of the bargain damages, out of pocket damages, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 11
### BREACH OF EXPRESS WARRANTY/FAILURE OF ESSENTIAL PURPOSE
(AGAINST AQUILA)

93. Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

94. Aquila expressly warranted that its yachts and the Aquila Yacht are sold worldwide and, "as such, must conform to the various rules and regulations required by other countries[]", including the USA. Furthermore, Aquila also warrants that it builds its yachts, including the Aquila Yacht, to guidelines

established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]." (collectively the "Standards Warranty")

95.    Furthermore, Aquila warranted that it would repair or replace defective parts ("Repair Warranty").

96.    US Before relied on the Standards and Repair Warranties in deciding to purchase and use the Aquila Yacht.

97.    The Aquila Yacht, however, did not confirm to the Standards Warranty because the yacht was improperly wired (fig. 1, *supra*), and did not use loom that was flame retardant or self-extinguishing (fig. 2, *supra*) or other comparable methods to minimize the risk of fire and fire spread, contrary to the standard of care for marine vessels operating in U.S. Waters and the EU Directive.

98.    Aquila knew the yacht was improperly wired and used loom that was not flame retardant or self-extinguishing before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

99.    The Repair Warranty failed its essential purpose.  In particular, prior to the Original Delivery Date, the Aquila Yacht had electrical and other problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*). Those electrical and other problems required warranty work be performed by MarineMax, which delayed delivery of the Aquila Yacht until the New Delivery Date.

100.    Subsequent to delivery, the Aquila Yacht continued experiencing electrical and other problems relating to the improperly wired electrical systems (fig. 1, *supra*).

101.    Despite performing warranty work before the yacht was delivered, and despite numerous warranty requests relating to the electrical and other systems of the Aquila Yacht by US Before shortly after taking delivery of the yacht until the Loss, and numerous attempts by MarineMax to fix the electrical problems and other problems, the improperly wired electrical systems remained unfixed and the use of improper loom continued.  Simply put, the Repair Warranty failed its essential purpose because the improperly wired electrical system and the use of improper loom were not repaired prior to and after delivery of the yacht despite Aquila's knowledge that the improper loom was used throughout the yacht.

102.    As a direct and proximate result of Aquila's breach of the Standards Warranty and its failure to repair the yacht pursuant to the Repair Warranty despite numerous requests and opportunity to repair, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

LEGAL\114684024\1

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's U.C.C. as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

**COUNT 12**
**BREACH OF EXPRESS WARRANTY/FAILURE OF ESSENTIAL PURPOSE UNDER MAGNUSSON MOSS ACT, 15 U.S.C. § 2310**
(**AGAINST AQUILA**)

103.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

104.    Aquila expressly warranted that its yachts and the Aquila Yacht are sold worldwide and, "as such, must conform to the various rules and regulations required by other countries[]", including the USA.  Furthermore, Aquila also warrants that it builds its yachts, including the Aquila Yacht, to guidelines established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]." (collectively the "Standards Warranty")

105.    Furthermore, Aquila warranted that it would repair or replace defective parts ("Repair Warranty").

LEGAL\114684024\1

106.    US Before relied on the Standards and Repair Warranties in deciding to purchase and use the Aquila Yacht.

107.    The Aquila Yacht, however, did not confirm to the Standards Warranty because the yacht was improperly wired (fig. 1, *supra*), and did not use loom that was flame retardant or self-extinguishing (fig. 2, *supra*) or other comparable methods to minimize the risk of fire and fire spread, contrary to the standard of care for marine vessels operating in U.S. Waters and the EU Directive.

108.    Aquila knew the yacht was improperly wired and used loom that was not flame retardant or self-extinguishing before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

109.    The Repair Warranty failed its essential purpose.  In particular, prior to the Original Delivery Date, the Aquila Yacht had electrical and other problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*). Those electrical and other problems required warranty work be performed by MarineMax, which delayed delivery of the Aquila Yacht until the New Delivery Date.

110.    Subsequent to delivery, the Aquila Yacht continued experiencing electrical and other problems relating to the improperly wired electrical systems (fig. 1, *supra*).

111.    Despite performing warranty work before the yacht was delivered, and despite numerous warranty requests relating to the electrical and other systems of the Aquila Yacht by US Before shortly after taking delivery of the yacht until the Loss, and numerous attempts by MarineMax to fix the electrical problems and other problems, the improperly wired electrical systems remained unfixed and the use of improper loom continued.  Simply put, the Repair Warranty failed its essential purpose because the improperly wired electrical system and the use of improper loom were not repaired prior to and after delivery of the yacht despite Aquila's knowledge that the improper loom was used throughout the yacht.

112.    As a direct and proximate result of Aquila's breach of the Standards Warranty and its failure to repair the yacht pursuant to the Repair Warranty despite numerous requests and opportunity to repair, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for all damages allowed by the Magnuson-Moss Warranty Act, including but not limited to damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's UCC as noted in

section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, attorney's fees and costs as provided for in 15 U.S.C. § 2310(d)(2), plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 13
## BREACH OF EXPRESS WARRANTY/FAILURE OF ESSENTIAL PURPOSE
### (AGAINST SINO US)

113.   Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

114.   Sino US expressly warranted that its yachts and the Aquila Yacht are sold worldwide and, "as such, must conform to the various rules and regulations required by other countries[]", including the USA.  Furthermore, Sino US also warrants that it builds its yachts, including the Aquila Yacht, to guidelines established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]." (collectively the "Standards Warranty")

115.   Furthermore, Sino US warranted that it would repair or replace defective parts ("Repair Warranty").

116.   US Before relied on the Standards and Repair Warranties in deciding to purchase and use the Aquila Yacht.

117. The Aquila Yacht, however, did not confirm to the Standards Warranty because the yacht was improperly wired (fig. 1, *supra*), and did not use loom that was flame retardant or self-extinguishing (fig. 2, *supra*) or other comparable methods to minimize the risk of fire and fire spread, contrary to the standard of care for marine vessels operating in U.S. Waters and the EU Directive.

118. Sino US knew the yacht was improperly wired and used loom that was not flame retardant or self-extinguishing before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

119. The Repair Warranty failed its essential purpose. In particular, prior to the Original Delivery Date, the Aquila Yacht had electrical and other problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*). Those electrical and other problems required warranty work be performed by MarineMax, which delayed delivery of the Aquila Yacht until the New Delivery Date.

120. Subsequent to delivery, the Aquila Yacht continued experiencing electrical and other problems relating to the improperly wired electrical systems (fig. 1, *supra*).

121. Despite performing warranty work before the yacht was delivered, and despite numerous warranty requests relating to the electrical and other systems of the Aquila Yacht by US Before shortly after taking delivery of the yacht

LEGAL\114684024\1

until the Loss, and numerous attempts by MarineMax to fix the electrical problems and other problems, the improperly wired electrical systems remained unfixed and the use of improper loom continued. Simply put, the Repair Warranty failed its essential purpose because the improperly wired electrical system and the use of improper loom were not repaired prior to and after delivery of the yacht despite Aquila's knowledge that the improper loom was used throughout the yacht.

122.   As a direct and proximate result of Sino US's breach of the Standards Warranty and its failure to repair the yacht pursuant to the Repair Warranty despite numerous requests and opportunity to repair, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's U.C.C. as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

LEGAL\114684024\1

## COUNT 14
## BREACH OF EXPRESS WARRANTY/FAILURE OF ESSENTIAL PURPOSE
## UNDER MAGNUSSON MOSS ACT, 15 U.S.C. § 2310
### (AGAINST SINO US)

123.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

124.    Sino US expressly warranted that its yachts and the Aquila Yacht are sold worldwide and, "as such, must conform to the various rules and regulations required by other countries[]", including the USA.   Furthermore, Sino US also warrants that it builds its yachts, including the Aquila Yacht, to guidelines established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]." (collectively the "Standards Warranty")

125.    Furthermore, Sino US warranted that it would repair or replace defective parts ("Repair Warranty").

126.    US Before relied on the Standards and Repair Warranties in deciding to purchase and use the Aquila Yacht.

127.    The Aquila Yacht, however, did not confirm to the Standards Warranty because the yacht was improperly wired (fig. 1, *supra*), and did not use loom that was flame retardant or self-extinguishing (fig. 2, *supra*) or other comparable methods to minimize the risk of fire and fire spread, contrary to the standard of care for marine vessels operating in U.S. Waters and the EU Directive.

-35-

128.   Sino US knew the yacht was improperly wired and used loom that was not flame retardant or self-extinguishing before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

129.   The Repair Warranty failed its essential purpose.  In particular, prior to the Original Delivery Date, the Aquila Yacht had electrical and other problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*). Those electrical and other problems required warranty work be performed by MarineMax, which delayed delivery of the Aquila Yacht until the New Delivery Date.

130.   Subsequent to delivery, the Aquila Yacht continued experiencing electrical and other problems relating to the improperly wired electrical systems (fig. 1, *supra*).

131.   Despite performing warranty work before the yacht was delivered, and despite numerous warranty requests relating to the electrical and other systems of the Aquila Yacht by US Before shortly after taking delivery of the yacht until the Loss, and numerous attempts by MarineMax to fix the electrical problems and other problems, the improperly wired electrical systems remained unfixed and the use of improper loom continued. Simply put, the Repair Warranty failed its essential purpose because the improperly wired electrical system and the use

-36-

of improper loom were not repaired prior to and after delivery of the yacht despite Sino US's knowledge that the improper loom was used throughout the yacht.

132.    As a direct and proximate result of Sino US's breach of the Standards Warranty and its failure to repair the yacht pursuant to the Repair Warranty despite numerous requests and opportunity to repair, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for all damages allowed by the Magnuson-Moss Warranty Act, including but not limited to damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's UCC as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, attorney's fees and costs as provided for in 15 U.S.C. § 2310(d)(2), plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

LEGAL\114684024\1

## COUNT 15
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE/FAILURE OF ESSENTIAL PURPOSE
### (AGAINST AQUILA)

133.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

134.    Prior to the Original Delivery Date, the Aquila Yacht had electrical problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*).  At the request of, and on behalf of, Aquila, MarineMax attempted to fix the electrical problems, which delayed delivery of the Aquila Yacht until the New Delivery Date.  Aquila knew the yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

135.    Subsequent to delivery, the Aquila Yacht continued experiencing electrical problems relating to the improperly wired electrical systems (fig. 1, *supra*), which resulted in US Before making numerous other requests for Aquila to fix the electrical problems.  Again, at the request of, and on behalf of, Aquila, MarineMax attempted to, but failed to, fix the electrical problems.  However, the electrical problems and the use of incorrect loom, *i.e.* non-flame retardant and non-self-extinguishing (fig. 2, *supra*), continued until the Loss.

136.    As a consequence of agreeing to fix the electrical problems, Aquila impliedly warranted that the repair work on the yacht would be performed in a

non-negligent workmanlike manner – that the electrical system would be properly wired and the correct loom or other comparable methods would be used to minimize the risk of fire and fire spread.

137. Despite numerous requests by US Before to Aquila to fix the electrical system, and numerous attempts and opportunities by MarineMax at the request of and on behalf of Aquila to fix the electrical problems, the improperly wired electrical systems remained and the use of improper loom continued.

138. Aquila breached the implied warranty of workmanlike performance it owed US Before by negligently failing to (a) repair the electrical problems relating to the improperly wired electrical systems, including without limitation, fixing the exposed electrical wiring and faulty wire connections that left the electrical wiring exposed (fig 1, *supra*), and (b) repair and/or replace the incorrect loom used in the yacht before the Loss.

139. As a direct and proximate result of Aquila's breach of the implied warranty of workmanlike performance and its negligent performance of the repair work, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

LEGAL\114684024\1

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for damages pursuant to sections 672.714 and 672.715, Florida Statutes, all other damages provided for in Florida's U.C.C. as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 16
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE/FAILURE OF ESSENTIAL PURPOSE
(AGAINST SINO US)

140. Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

141. Prior to the Original Delivery Date, the Aquila Yacht had electrical problems that were a direct result of the improperly wired electrical system (fig. 1, *supra*). At the request of, and on behalf of, Sino US, MarineMax attempted to fix the electrical problems, which delayed delivery of the Aquila Yacht until the New Delivery Date. Sino US knew the yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

142. Subsequent to delivery, the Aquila Yacht continued experiencing electrical problems relating to the improperly wired electrical systems (fig. 1,

-40-

*supra*), which resulted in US Before making numerous other requests for Sino US to fix the electrical problems. Again, at the request of, and on behalf of, Sino US, MarineMax attempted to, but failed to, fix the electrical problems. However, the electrical problems and the use of incorrect loom, *i.e.* non-flame retardant and non-self-extinguishing (fig. 2, *supra*), continued until the Loss.

143.    As a consequence of agreeing to fix the electrical problems, Sino US impliedly warranted that the repair work on the yacht would be performed in a non-negligent workmanlike manner – that the electrical system would be properly wired and the correct loom or other comparable methods would be used to minimize the risk of fire and fire spread.

144.    Despite numerous requests by US Before to Sino US to fix the electrical system, and numerous attempts and opportunities by MarineMax at the request of and on behalf of Sino US to fix the electrical problems, the improperly wired electrical systems remained and the use of improper loom continued.

145.    Sino US breached the implied warranty of workmanlike performance it owed US Before by negligently failing to (a) repair the electrical problems relating to the improperly wired electrical systems, including without limitation, fixing the exposed electrical wiring and faulty wire connections that left the electrical wiring exposed (fig 1, *supra*), and (b) repair and/or replace the incorrect loom used in the yacht before the Loss.

-41-

146.    As a direct and proximate result of Sino US's breach of the implied warranty of workmanlike performance and its negligent performance of the repair work, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for damages pursuant to sections 672.714 and 672.715, Florida Statutes, all other damages provided for in Florida's U.C.C. as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

### COUNT 17
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### MAGNUSSON MOSS ACT, 15 U.S.C. § 2310
### (AGAINST AQUILA)

147.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

148.    Prior to and at the time of purchase, Aquila impliedly warranted that the Aquila Yacht was fit for its ordinary purpose – a sailing yacht that could be used for extended sea voyages.

LEGAL\114684024\1

149.    The Aquila Yacht, however, was not fit for its ordinary and intended purpose when it was sold to US Before.

150.    Specifically, the yacht was improperly wired (fig. 1, *supra*), and failed to use the correct loom (fig. 2, *supra*) or other methods to minimize the risk of fire and fire spread, which failure made the yacht susceptible to a risk of fire caused by electrical arcing.  The use of the incorrect loom added to the fire risk, specifically the risk of fire spread, because the loom would continue to burn after a fire started instead of self-extinguishing.

151.    Aquila knew the yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

152.    The defect and deficiencies because of the improper wiring and use of incorrect loom rendered the yacht unseaworthy, unsafe and unfit for its intended purpose as a recreational luxury sailing yacht, thus constituting a breach of the implied warranty of merchantability.

153.    As a direct and proximate result of Aquila's breach of the implied warranty of merchantability, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

LEGAL\114684024\1

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for all damages allowed by the Magnuson-Moss Warranty Act, including but not limited to damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's UCC as noted in section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, attorney's fees and costs as provided for in 15 U.S.C. § 2310(d)(2), plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate**.**

**COUNT 18**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**MAGNUSSON MOSS ACT, 15 U.S.C. § 2310**
(**AGAINST SINO US**)

154.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

155.    Prior to and at the time of purchase, Sino US impliedly warranted that the Aquila Yacht was fit for its ordinary purpose – a sailing yacht that could be used for extended and short sea voyages.

156.    The Aquila Yacht, however, was not fit for its ordinary and intended purpose when it was sold to US Before.

157.    Specifically, the yacht was improperly wired (fig. 1, *supra*), and failed to use the correct loom (fig. 2, *supra*) or other methods to minimize the risk of fire

-44-

and fire spread, which failure made the yacht susceptible to a risk of fire caused by electrical arcing. The use of the incorrect loom added to the fire risk, specifically the risk of fire spread, because the loom would continue to burn after a fire started instead of self-extinguishing.

158. Sino US knew the yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and deficiencies throughout the yacht.

159. The defect and deficiencies because of the improper wiring and use of incorrect loom rendered the yacht unseaworthy, unsafe and unfit for its intended purpose as a recreational luxury sailing yacht, thus constituting a breach of the implied warranty of merchantability.

160. As a direct and proximate result of Sino US's breach of the implied warranty of merchantability, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for all damages allowed by the Magnuson-Moss Warranty Act, including but not limited to damages pursuant to section 672.714, Florida Statutes, all other damages provided for in Florida's UCC as noted in

section 672.719(2), Florida Statutes, and other allowable damages up to and including the amount of the total Insured Damages, attorney's fees and costs as provided for in 15 U.S.C. § 2310(d)(2), plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 19
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT VIOLATION
## FDUTPA § 501.201, *et. seq.*
### (AGAINST AQUILA)

161.   Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

162.   Aquila markets and sells it yachts, including the Aquila Yacht and others of the similar class, *i.e.* catamarans, in the USA and worldwide.  In connection with doing so, it warrants and represents that its yachts "must conform to the various rules and regulations required by other countries[]", including the USA.  Furthermore, Aquila also warrants and represents that it builds its yachts, including the Aquila Yacht, to guidelines established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]."

163.   Yachts that will be sold into and used in the US must comply with applicable Coast Guard Regulations, which incorporate ABYC E-8 and E-9 standards that were later combined into ABYC E-11.  Separately, the use of flame retardant and/or self-executing loom as outlined in the ABYC standards is the

LEGAL\114684024\1

standard of care for marine vessels operating in U.S. waters. Finally, the EU Directive requires that electrical systems be "designed and installed so as to ensure proper operation of the watercraft under normal conditions of use and shall be such as to minimse (sic) risk of fire and electric shock."

164. Notwithstanding Aquila's representations and warranties, including that the Aquila Yacht was Cat. A (Ocean) certified and the requirements and the standard of care to properly wire and properly loom the electrical wiring of yachts being marketed and sold into the US, Aquila sold and delivered into Florida, the Aquila Yacht, which was improperly wired (fig. 1, *supra*), and used the incorrect loom (fig. 2, *supra*), thus making the yacht susceptible to a risk of fire caused by electrical arcing that would spread instead of self-extinguishing because of the use of the incorrect loom.

165. Aquila knew the Aquila Yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and deficiencies throughout the yacht. It also knew the improper wires and incorrect loom remained in place when it performed various warranty service on the Aquila Yacht both before purchase and after purchase, without taking steps to correct the deficiencies/defects.

166. As a direct and proximate result of Aquila's deceptive and unfair practice of representing the Aquila Yacht is made in a particular manner and then

-47-

delivering something to the contrary, *i.e.* improperly wired and incorrect loom, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Aquila for actual and other damages allowed by section 501.211, Florida Statutes, up to and including the total Insured Damages, attorney's fees and costs, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

## COUNT 20
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT VIOLATION
### FDUTPA § 501.201, *et. seq.*
(**AGAINST SINO US**)

167.    Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

168.    Sino US markets and sells it yachts, including the Aquila Yacht and others of the similar class, *i.e.* catamarans, in the USA and worldwide.    In connection with doing so, it warrants and represents that its yachts "must conform to the various rules and regulations required by other countries[]", including the USA.  Furthermore, Sino US also warrants and represents that it builds its yachts,

including the Aquila Yacht, to guidelines established under the Recreational Craft EU Directive 2013/53/EU ["EU Directive"]."

169. Yachts that will be sold into and used in the US must comply with applicable Coast Guard Regulations, which incorporate ABYC E-8 and E-9 standards that were later combined into ABYC E-11. Separately, the use of flame retardant and/or self-executing loom as outlined in the ABYC standards is the standard of care for marine vessels operating in U.S. waters. Finally, the EU Directive requires that electrical systems be "designed and installed so as to ensure proper operation of the watercraft under normal conditions of use and shall be such as to minimse (sic) risk of fire and electric shock.".

170. Notwithstanding Sino US's representations and warranties, including that the Aquila Yacht was Cat. A (Ocean) certified and the requirements and the standard of care to properly wire and properly loom the electrical wiring of yachts being marketed and sold into the US, Sino US sold and delivered into Florida, the Aquila Yacht, which was improperly wired (fig. 1, *supra*), and used the incorrect loom (fig. 2, *supra*), thus making the yacht susceptible to a risk of fire caused by electrical arcing that would spread instead of self-extinguishing because of the use of the incorrect loom.

171. Sino US knew the Aquila Yacht was improperly wired and used the incorrect loom before the sale as evident by the abundance of such defects and

LEGAL\114684024\1

deficiencies throughout the yacht. It also knew the improper wires and incorrect loom remained in place when it performed various warranty service on the Aquila Yacht both before purchase and after purchase, without taking steps to correct the deficiencies/defects.

172. As a direct and proximate result of Sino US's deceptive and unfair practice of representing the Aquila Yacht was made in a particular manner and then delivering something to the contrary, *i.e.* improperly wired and incorrect loom, an electrical fire began on the Aquila Yacht behind the wall panels concealing the electrical wiring, spread to other areas of the yacht because of the use of non-flame retardant loom (wire covering) and completely destroyed the yacht, which caused the Loss and resulting damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment in its favor and against Sino US for actual and other damages allowed by section 501.211, Florida Statutes, up to and including the total Insured Damages, attorney's fees and costs, plus pre and post judgment interest, as applicable, and grant Plaintiff such further relief the Court deems just and appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

**COZEN O'CONNOR**
*Counsel for Plaintiff*

-50-

-51-

Southeast Financial Center
200 S. Biscayne Blvd., Suite 3000
Miami, Florida 33131
Phone: (305) 704-5940

By: /s Jermaine A. Lee
**Jermaine A. Lee, Esq.**
Florida Bar No.: 0850861
jalee@cozen.com
ramartinez@cozen.com
elenabrown@cozen.com

LEGAL\114684024\1